I. NEEL CHATTERJEE (SBN 173985)
nchatterjee@goodwinlaw.com
ANDREW S. ONG (SBN 267889)
aong@goodwinlaw.com
**GOODWIN PROCTER LLP**
601 Marshall Street
Redwood City, CA 94063
Tel.: +1 650 752 3100
Fax.: +1 650 853 1038

WENDELL LIN (SBN 329656)
WLin@goodwinlaw.com
**GOODWIN PROCTER LLP**
Three Embarcadero Center, Suite 2800
San Francisco, CA  94111
Tel: +415 733 6000
Fax: +415 677 9041

Attorneys for Plaintiff
ALPHONSO INC.

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| ALPHONSO INC.,<br><br>      Plaintiff,<br><br>   v.<br><br>TREMOR VIDEO, INC.,<br><br>      Defendant. | Case No. 5:22-CV-03629<br><br>**COMPLAINT FOR TRADE SECRET MISAPPROPRIATION: (1) VIOLATION OF THE DEFEND TRADE SECRETS ACT, 18 U.S.C. § 1836, *ET SEQ.*; AND (2) VIOLATION OF THE CALIFORNIA UNIFORM TRADE SECRETS ACT, CAL. CIV. CODE § 3426, *ET SEQ.* |

**REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED**

Plaintiff Alphonso Inc. ("Alphonso") brings this action for trade secret misappropriation against Defendant Tremor Video, Inc. ("Tremor").

**THE PARTIES**

1. Plaintiff Alphonso Inc. is a television data and measurement company, providing real-time television advertisement campaign measurement. Alphonso is a Delaware corporation with its principal place of business located at 211 Hope Street, Suite 390905, Mountain View, CA 94041.

2. On information and belief, Defendant Tremor Video, Inc. is a Delaware corporation with a principal office located at 1177 Avenue of the Americas, 9th Floor, New York, NY 10036.

**NATURE OF THE ACTION**

3. This is a case about Tremor's unlawful misappropriation of Alphonso's confidential, proprietary, and trade-secret information, which Alphonso disclosed to Tremor—in confidence—over a multiyear business relationship between the two parties. The information misappropriated by Tremor includes confidential technical and business information relating to Alphonso's Automatic Content Recognition ("ACR") technology, which Alphonso spent over eight years and more than $40 million to develop, and allowed and continues to allow Alphonso to provide industry-leading targeted digital advertising services to advertisers, brands, and other customers.

4. As soon as the parties' business relationship was terminated, Tremor announced that, through a new strategic partnership with one of Alphonso's former business partners, it would be providing a "TV Intelligence solution." The "TV Intelligence solution" described by Tremor had much of the same functionality as the services that Alphonso had previously confidentially provided and described to Tremor as part of their business relationship. On information and belief, Tremor could not have independently developed the technology to integrate ACR data into its "TV Intelligence solution" and gone to market in such a short timeframe without the use of Alphonso's confidential and trade-secret information.

**JURISDICTION AND VENUE**

5. This is an action for injunctive and other relief for trade secret misappropriation under the Defense of Trade Secrets Act, 18 U.S.C. § 1836, *et seq.* ("DTSA"), and the California Uniform Trade Secrets Act, California Civil Code § 3426, *et seq.* ("CUTSA").

1

COMPLAINT FOR TRADE SECRET MISAPPROPRIATION

6. The Court has jurisdiction over Alphonso's claim under the DTSA pursuant to 18 U.S.C. § 1836 and 28 U.S.C. § 1331. The Court has supplemental jurisdiction over Alphonso's claim under CUTSA pursuant to 28 U.S.C. § 1367.

7. The Court has personal jurisdiction over Tremor at least because Tremor has conducted, and continues to conduct, business in California through advertising, offering for sale, and selling products and services in California. Additionally, Tremor knows that Alphonso's principal place of business is in Northern California and, thus, must have known that any harm caused by Tremor's trade secret misappropriation would be suffered in Northern California.

8. Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to Alphonso's claims occurred, and Alphonso suffered injury as a result of those events, in this District.

## FACTUAL BACKGROUND

### Alphonso's Groundbreaking Technology

9. Alphonso is a technology company that provides sophisticated targeted advertising technology to customers that allows them to place targeted digital ads on user devices, such as smartphones and tablets.

10. Alphonso assists its customers in placing targeted digital ads on user devices by collecting TV viewership and other demographic information that Alphonso's customers can use to selectively bid for digital ad space on a mobile device based on past TV viewership information associated with that mobile device.

11. Alphonso acquires TV viewership information by contracting with third party manufacturers to install Alphonso's software development kit ("SDK") on smart TVs, set-top boxes, and mobile applications. The SDK samples audio content from television program signals to generate data that can be used to identify the program being streamed to the user's device. Alphonso accomplishes this identification by creating a database record containing a unique content identifier and associated information, such as a timestamp, user device ID, and/or IP address of the user device.

12. To facilitate customer requests for advertising campaigns, Alphonso has collected vast amounts of viewership and other information in a confidential and proprietary database in a

manner that allows Alphonso to quickly and efficiently access information during advertising campaigns.  Alphonso has also developed confidential and proprietary tools and processes relating to ACR that allow Alphonso to effectively identify and use the information collected by Alphonso to target audiences on digital devices.  For example, Alphonso has developed proprietary software tools such as the Campaign Segment Tool which uses IP addresses and device IDs to generate targeted advertising campaigns based on viewership patterns and audience demographics, the Data Augmenter which identifies prior advertising segments based on IP addresses and device IDs and helps facilitate bids for third party advertising exchanges, and the Device Graph which works in tandem with ACR to connect a smart TV's IP address with other active devices within a household to coordinate advertiser attribution, among others.  Alphonso spent over eight years and more than $40 million developing its database and proprietary software tools.  Because the attribution and application of ACR data to targeted digital advertising involves complex processes that require sophisticated technology and know-how, these proprietary tools and processes provide a significant competitive advantage to Alphonso.

13. In addition to technical information related to collecting and using ACR data, Alphonso has also developed, over multiple years, effective marketing and sales strategies that have allowed it to successfully win business from numerous advertisers, brands, and other companies. Alphonso does not disclose to the public how its database is organized, how its confidential and proprietary software tools operate to utilize and analyze viewership and other information stored in its database, or any of the details of its marketing and sales strategies, as such disclosure would undoubtedly give Alphonso's competitors an unfair advantage in the marketplace.  Indeed, the success and livelihood of Alphonso's business rests on its ability to protect its proprietary information and trade secrets.

14. Given the highly sensitive and valuable nature of its technical and business information in the ultracompetitive marketplace of digital advertising, Alphonso takes multiple measures to protect the confidentiality of that information.  For example, Alphonso: (1) requires all of its customers to agree to strict confidentiality provisions that restrict the ability of customers to disclose publicly any of Alphonso's proprietary and confidential information; (2) requires all

employees and contractors to sign strict confidentiality agreements; (3) maintains all confidential information, including any source code, on password-protected servers; and (4) limits access to extremely sensitive information to only those employees that need to access such information.

**Tremor Works with Alphonso to Leverage Alphonso's Technology**

15. Tremor is a video advertising company that creates targeted digital video marketing campaigns for its customers.

16. Alphonso previously worked with Tremor for multiple years to provide targeted advertising services to Tremor's customers. Over the course of its business relationship with Tremor, Alphonso disclosed to Tremor confidential and trade-secret information relating to all aspects of providing digital advertising campaigns for brands and other advertisers. Tremor knew or should have known that the confidential and trade-secret information that Alphonso disclosed to Tremor was meant to remain secret and not to be disclosed to the public. Tremor also knew or should have known that it was not free to use Alphonso's confidential and trade-secret information for any purpose other than in furtherance of its business relationship with Alphonso. In fact, consistent with its normal business procedures, Alphonso required Tremor to sign a confidentiality agreement before Alphonso ever disclosed any of its trade-secret information to Tremor.

17. As part of its business relationship with Tremor, Alphonso met on an almost-daily basis with Tremor, assisting Tremor with technical, marketing, and other aspects of providing targeted digital advertising to Tremor's customers. For example, Alphonso confidentially disclosed to Tremor trade secrets including (1) how Alphonso's ACR data was collected and stored, (2) how the ACR data could be most effectively used to help customers perform targeted digital advertising, including how Alphonso's proprietary software tools could be used as part of that targeted digital advertising, and (3) marketing and sales strategies for obtaining customers. Alphonso provided such information in a number of ways, including through email correspondence, documents (such as PowerPoint presentations, data attribution reports, target segment schematic spreadsheets), as well as orally during meetings and calls. Tremor knew or should have known that Alphonso provided this information on a confidential basis only.

18. Around Fall 2019, after Tremor had accumulated substantial amounts of Alphonso's trade secrets, Tremor sought to exploit this information and develop its own competing product based on ACR data. To do this, Tremor began negotiating with Alphonso around December 2019 to amend their Strategic Partnership Agreement, specifically to allow Tremor to use ACR data from other data suppliers which it was otherwise prohibited from doing due to the Agreement's exclusivity provisions. On information and belief, Tremor thereafter began secretly developing its competing product by integrating and using non-Alphonso ACR data. But Tremor quickly realized that it would need to expend an incredible amount of time and resources to fully develop ACR-integration capabilities into its technology.

19. So starting around February 2020, notwithstanding the training and information that Alphonso had already provided, Tremor repeatedly urged Alphonso to share more nuanced and technical aspects of Alphonso's data, including asking for materials related to how ACR technology is implemented on user devices, the methods applied by Alphonso for its data validation and analysis, and marketing materials that explain how ACR works and how ACR technology could be used in advertising campaigns. As the parties' business relationship was coming to a close, Tremor also started to make repeated demands for Alphonso to provide it with complete or "raw" data feeds, so as to understand all fields used by Alphonso for its proprietary data and database. The raw information that Tremor requested could enable Tremor to reverse engineer Alphonso's ACR data and database schemas, and how such data can be best be used for advertising campaigns. Notably, Alphonso previously had only shared with Tremor targeted advertising segments—not complete or raw data feeds—because Tremor did not need the raw data to provide its advertising services. Unaware of Tremor's true intentions and in view of the parties' multiyear business relationship, Alphonso obliged in good faith and provided this information in the form of documents and meetings with Tremor. Again, Tremor knew or should have known that Alphonso provided this information on a confidential basis only.

20. Alphonso's business relationship with Tremor terminated on or about May 14, 2021.

**Tremor's Announced Partnership With VIDAA**

21. On or about October 26, 2021, Tremor issued a press release announcing "a global and exclusive strategic partnership with VIDAA, a smart TV operating system and content platform preinstalled on most TVs manufactured by Hisense, considered one of the top TV manufacturers in the world, and also integrated into a number of premium original equipment manufacturers (OEM) including Toshiba." According to VIDAA's website, "VIDAA was founded by the Hisense Group and other investors in March of 2019 with the objective of building a market leading Smart TV OS and Content Platform that placed the consumer at the center of the experience." According to Tremor's October 26, 2021 press release, Tremor would "gain exclusive access to VIDAA's automatic content recognition (ACR) data, both in the US and internationally."

22. Tremor's press release further stated that it would "bring VIDAA's ACR data into its TV Intelligence solution starting May 1, 2022, which will make Tremor International the only end-to-end technology platform with direct access to OEM ACR data for targeting purposes, outside the walled gardens."

23. Notably, Alphonso had previously entered into a software license agreement with Hisense USA Corporation, a subsidiary of Hisense Group, under which Alphonso granted Hisense a non-exclusive license to Alphonso's SDK and Application Programming Interface (API). Hisense sells its products throughout North America at well-known retailers such as Best Buy, Lowes, Walmart, Costco.com, Amazon.com, and many others. Tremor knew about Alphonso's business relationship with Hisense.

24. [REDACTED] Tremor, according to its press release, would begin using VIDAA's ACR data as part of its "TV Intelligence solution."

25. As described in Tremor's website and press release, Tremor's "TV Intelligence solution" provides much of the same ACR-related functionality that Alphonso previously described and provided to Tremor in confidence. For example, Alphonso disclosed to Tremor confidential information on targeted digital advertising based on various audience demographic, geographic, and behavior factors. This confidential information included trade secrets on how to leverage ACR data

based on user viewing habits (*e.g.*, frequency, content type, propensity to binge watch, user engagement level, etc.), consumption of programming (*e.g.*, which shows, sports, genres are watched), advertisement exposure (*e.g.*, frequency by brand, category, purchasing habits, etc.), device type (*e.g.*, TV, mobile, other internet connected devices, etc.), service provider (*e.g.*, streaming, cable, etc.), and audience location (*e.g.*, region, market, city, zip code, etc.), amongst others.  This confidential and trade secret information enables precise audience targeting and allows advertising partners to see who saw their ads and where, and also who saw their competitors' ads.

26.    Tremor's "TV Intelligence solution," as described in its press release and website, identically uses ACR data to provide "targeting and measurement" tactics to marketers to run advertisement campaigns.  Specifically, Tremor's "TV Intelligence solution" claims to use ACR data to allow advertising partners to target viewers with ads based on "audience segment customization." In other words, it uses TV viewership data such as program content, advertisement exposure based on frequency, advertisement exposure to competitor's ads, and device attribution to provide targeted digital advertising to customers—the same targeting and ACR-related functionality in the trade secrets that Alphonso disclosed to Tremor in confidence during the parties' business relationship.

27.    On or about June 21, 2022, Tremor announced that it would be investing $25 million in VIDAA to extend Tremor's use of ACR data for global measurement and targeting.  According to Tremor, the deal is expected to close in the third quarter of 2022 with funding coming from Tremor's existing cash resources.  On information and belief, this investment would allow Tremor to further leverage the ACR technology it misappropriated from Alphonso and further develop its competing product.

28.    Alphonso spent over eight years and more than $40 million to develop its proprietary ACR technology and its marketing and sales strategies to obtain customers for targeted advertising. On information and belief, Tremor could not have independently developed the technology to integrate ACR data into its "TV Intelligence solution" and gone to market so quickly without misappropriating the trade-secret technical and marketing information that Alphonso had disclosed to Tremor on a confidential basis over multiple years.

## CLAIM I

### (Defense of Trade Secrets Act —18 U.S.C. § 1836, *et seq.*)

29. Alphonso re-alleges and incorporates each and every allegation of the foregoing paragraphs as though fully set forth herein.

30. Alphonso owns and possesses certain confidential, proprietary, and trade-secret information, as alleged above. For example, Alphonso's confidential and trade-secret information includes how it collects information for and organizes its ACR database, the proprietary tools Alphonso developed for use in creating effective, targeted advertising campaigns for customers, and marketing and sales strategies used to capture customers for targeted advertising campaigns.

31. Alphonso's confidential, proprietary, and trade-secret information relates to products and services used, sold, shipped, and/or ordered in, or intended to be use used, sold, shipped and/or ordered in, interstate or foreign commerce.

32. Alphonso has taken reasonable measures to keep its confidential, proprietary, and trade-secret information secret. These efforts include, but are not limited to, restricting client publication and disclosure of Alphonso's information, requiring employees and contractors to sign confidentiality agreements, and maintaining confidential information on a secure server. Additionally, whenever technical information (including, but not limited to, architecture, data schemas, algorithms, software code) must be shared, it is only made accessible to engineering teams and access is allowed solely through, and protected by, Secure Shell Protocol (SSH) and private-access keys. Finally, Alphonso does not publicly disclose any of its secret, technical information online or in publications, and any Alphonso intellectual property that is disclosed is carefully protected through patent protection.

33. Due to these security measures, Alphonso's confidential and proprietary trade-secret information is not available to the public through any legitimate means.

34. Tremor knew or should have known under the circumstances that the information misappropriated by Tremor constituted Alphonso's trade secrets.

35. Alphonso's confidential, proprietary, and trade-secret information derives independent economic value from not being generally known to, and not being readily ascertainable through proper means by, another person who could obtain economic value from the disclosure or use of the information.

36. In violation of Alphonso's rights, Tremor misappropriated Alphonso's confidential, proprietary, and trade-secret information by using this information to create a competing product and business using ACR data obtained from Tremor's new partnership with VIDAA.

37. Tremor's misappropriation of Alphonso's confidential, proprietary, and trade-secret information was intentional, knowing, willful, malicious, fraudulent, and oppressive, and thereby entitles Alphonso to an award of exemplary damages of two times the amount to which Alphonso would otherwise be entitled, pursuant to 18 U.S.C. § 1836(b)(3)(C).

38. Tremor has attempted, and continues to attempt, to conceal its misappropriation.

39. On information and belief, if Tremor is not enjoined, Tremor will continue to misappropriate and use Alphonso's trade-secret information for its own benefit and to Alphonso's detriment.

40. As a direct and proximate result of Tremor's conduct, Alphonso has suffered, and if Tremor's conduct is not stopped, Alphonso will continue to suffer, severe competitive harm, irreparable injury, and significant damages in an amount to be proven at trial. In addition to damages, Alphonso seeks preliminary and permanent injunctive relief to recover and protect its confidential, proprietary, and trade-secret information and to protect other legitimate business interests. Alphonso's business operates in a competitive market and will continue to suffer irreparable harm absent injunctive relief.

41. Alphonso has been damaged by all the foregoing and is entitled to an award of exemplary damages and attorneys' fees.

## COUNT II

**(California Uniform Trade Secrets Act—California Civil Code § 3426, *et seq.*)**

42. Alphonso re-alleges and incorporates each and every allegation of the foregoing paragraphs as though fully set forth herein.

43.     Alphonso owns and possesses certain confidential, proprietary, and trade-secret information, as alleged above.  For example, Alphonso's confidential and trade-secret information includes how it collects information for and organizes its ACR database, the proprietary tools Alphonso developed for use in creating effective targeted advertising campaigns for customers, and marketing and sales strategies used to capture customers for targeted advertising campaigns.

44.     Alphonso has taken reasonable measures to keep its confidential, proprietary, and trade-secret information secret.  These efforts include, but are not limited to, restricting client publication and disclosure of Alphonso's information, requiring employees and contractors to sign confidentiality agreements, and maintaining confidential information on a secure server. Additionally, whenever technical information (including, but not limited to, architecture, data schemas, algorithms, software code) must be shared, it is only made accessible to engineering teams and access is allowed solely through, and protected by, Secure Shell Protocol (SSH) and private-access keys.  Finally, Alphonso does not publicly disclose any of its secret, technical information online or in publications, and any Alphonso intellectual property that is disclosed is carefully protected through patent protection.

45.     Due to these security measures, Alphonso's confidential and proprietary trade-secret information is not available to the public through any legitimate means.

46.     Tremor knew or should have known under the circumstances that the information misappropriated by Tremor constituted trade secrets.

47.     Alphonso's confidential, proprietary, and trade-secret information derives independent economic value from not being generally known to, and not being readily ascertainable through proper means by, another person who could obtain economic value from the disclosure or use of the information.

48.     In violation of Alphonso's rights, Tremor misappropriated Alphonso's confidential, proprietary, and trade-secret information by using this information to create a competing product and business using ACR data obtained from Tremor's new partnership with VIDAA.

49. Tremor's misappropriation of Alphonso's confidential, proprietary, and trade-secret information was willful, malicious, and fraudulent. Alphonso is thereby entitled to exemplary damages under California Civil Code § 3426.3.

50. Tremor has attempted and continues to attempt to conceal its misappropriation.

51. If Tremor is not enjoined, Tremor will continue to misappropriate and use Alphonso's trade-secret information for its own benefit and to Alphonso's detriment.

52. As a direct and proximate result of Tremor's conduct, Alphonso has suffered and if Tremor's conduct is not stopped, Alphonso will continue to suffer severe competitive harm, irreparable injury, and significant damages in an amount to be proven at trial. In addition to damages, Alphonso seeks preliminary and permanent injunctive relief to recover and protect its confidential, proprietary, and trade-secret information and to protect other legitimate business interests. Alphonso's business operates in a competitive market and will continue to suffer irreparable harm absent injunctive relief.

53. Tremor's conduct constitutes transgressions of a continuing nature for which Alphonso has no adequate remedy at law. Unless and until enjoined and restrained by order of this Court, Tremor will continue to retain and use Alphonso's trade-secret information to enrich itself and divert business from Alphonso. Pursuant to California Civil Code § 3426.2, Alphonso is entitled to an injunction against the misappropriation and continued misappropriation of trade secrets as alleged herein and further asks the Court to restrain Tremor from using all trade-secret information misappropriated from Alphonso and to return all trade-secret information to Alphonso.

54. Pursuant to California Civil Code § 3426.4 and related law, Alphonso is entitled to an award of attorney's fees for Tremor's misappropriation of trade secrets.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff Alphonso respectfully requests that this Court grant:

A. Judgment against Tremor on all causes of action alleged herein;

B. Compensatory damages, including lost profits and lost business value, in an amount to be proven at trial;

C. Injunctive relief;

        D.      Attorneys' fees and costs of suit incurred herein as allowed by law; and

        E.      Any other relief the Court deems just and proper.

## JURY DEMAND

Plaintiff Alphonso hereby demands a trial by jury on all claims so triable.

Dated: June 21, 2022

Respectfully submitted,

By: /s/ *I. Neel Chatterjee*
I. Neel Chatterjee
Andrew S. Ong
GOODWIN PROCTER LLP
601 Marshall Street
Redwood City, CA 94063

Wendell Lin
GOODWIN PROCTER LLP
Three Embarcadero Center, Suite 2800
San Francisco, CA  94111

Attorneys for Plaintiff
ALPHONSO INC.

COMPLAINT FOR TRADE SECRET MISAPPROPRIATION